**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRYAN KANU,

    Plaintiff,

v.

SIEMENS PLM SOFTWARE, et al.,

    Defendants.

Case No. 1:18-cv-37

Black, J.
Bowman, M.J.

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

On January 19, 2018, Plaintiff filed motions seeking leave to file two separate complaints in this Court *in forma pauperis*, or without payment of the requisite filing fee that is ordinarily required to file a case in this court.[1] (Doc. 1). On January 29, 2018, the undersigned conditionally granted Plaintiff leave to initiate both cases *in forma pauperis*, but simultaneously issued an order requiring Plaintiff to "show cause" why his *in forma pauperis* status should not be revoked and denied. Additionally, the undersigned filed a Report and Recommendation in each of the two cases recommending that the initial complaints be dismissed, without prejudice to refile a first amended complaint to correct the glaring deficiencies of the related complaints.

On February 5, 2018, Plaintiff filed responses to the "show cause" orders issued in each of his two cases, as well as amended complaints in both cases that purport to cure the fatal deficiencies of the initial complaints. Because Plaintiff does not qualify for *in forma pauperis* status, I now recommend that the prior conditional grant of such

---

[1]The second case was opened as *Kanu v. Seimens PLM Software*, Case No. 1:18-cv-38.

status be revoked, and that Plaintiff be required to pay the requisite $400 filing fee in order to proceed in this Court.

Irrespective of his filing status, the undersigned continues to find Plaintiff's complaint to be fatally deficient because it fails to state any claim against any Defendant, and therefore remains subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) (to the extent that Plaintiff is permitted to proceed *in forma pauperis*) or under *Apple v. Glenn*. As Plaintiff has already been granted one opportunity to amend his complaint to cure the obvious and fatal deficiencies, he should not be permitted to further amend at this time.

I. **Revocation of *In Forma Pauperis* Status**

Having reviewed Plaintiff's response to the "show cause" order, the undersigned now recommends that the prior conditional grant of *in forma pauperis* status be revoked, and that Plaintiff be directed to pay the full $400.00 filing fee. As noted in this Court's show cause order, Plaintiff's initial application to proceed in *forma pauperis* indicates that he currently has approximately $8,100.00 in savings, checking, or a related account – a sum that far exceeds the filing fee for this action. In his response to the Order requiring him to show cause why he should not be required to pay the filing fee, Plaintiff states that "he pays the monthly interest on each of his 6 private Sallie Mae [student] loans in order to reduce the amount he has to pay upon graduation." (Doc. 5 at 1).[2] Plaintiff further argues that he has a monthly cable bill and weekly grocery expenses, as well as a fluctuating electric bill. He states that he is "doing the best he can to get

---

[2]Student loans are typically placed in a deferred payment status during the period of time an individual remains a full-time student. Aside from Plaintiff's preference to reduce his total student loan liability upon graduation, there is no indication that he is in default, or would be placed in default if he failed to make a monthly interest payment. Even if the $144 monthly interest payments are mandatory, however, they do not suffice to qualify Plaintiff for waiver of the filing fee in this case.

2

through college while being financially responsible as an independent student," and therefore seeks a waiver of the filing fees in his two cases. He compares the combined total of $800 in filing fees for both cases to the "equivalent of one month's rent, at least two weeks of groceries, and one month of high speed internet."

Plaintiff's desire to maintain his financial independence and/or to preserve his more than eight thousand dollars in savings is not a sufficient basis to grant him pauper status. Proceeding *in forma pauperis* is a privilege, not an unqualified right. *See Shobe v. People of the State of California,* 362 F.2d 545, 546 (9th Cir.1966). Therefore, a district court does not abuse its discretion when it denies an application to proceed *in forma pauperis* where the applicant appears to have sufficient assets with which to pay the requisite filing fee. *See, e.g., Ibrahim v. Food Lion, Inc.*, 149 F.3d 1183, 1998 WL 381326 (6th Cir. June 26, 1998) (Table, affirming discretionary denial of *in forma pauperis* request where applicant earned $165 per week and had $400 in bank account, in addition to automobile valued at less than $4,000); *accord Brogue v. Fort Knox Fed. Credit Union,* No. 96–1896, 114 F.3d 1186, 1997 WL 242032, at *1 (6th Cir. May 8, 1997) (Table).

**II. General Screening Authority**

**A. Screening Under 28 U.S.C. § 1915**

To the extent that a reviewing court would disagree with the revocation of Plaintiff's *in forma pauperis* motion, the amended complaint remains before the Court for a *sua sponte* review to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief

may be granted or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious.  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).  A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915 (e)(2)(B)(ii).  Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)).  The complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010)("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

Plaintiff's amended complaint is significantly shorter than his original 283 page version. The brevity of the amended complaint is a welcome improvement and comes close to compliance with Rule 8, although Plaintiff has failed to number the paragraphs in his complaint as specifically directed in this Court's last order. The amended complaint contains a list of three Defendants and identifies the basis of subject matter jurisdiction as an employment discrimination suit filed under 42 U.S.C. §2000e-5(f)(1). (Doc. 6). Three separate Notices of Plaintiff's right to sue, all dated November 20, 2017, are attached. (Doc. 6-1).

Although Plaintiff's allegations are extremely conclusory, the United States Supreme Court held *in Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) that the prima facie requirements of Title VII are an evidentiary standard, not a pleading standard. The Sixth Circuit has continued to apply *Swierkiewicz*'s holding even after the Supreme Court's decisions in *Twombly* and *Iqbal*. Based upon that case authority, it is rare to recommend dismissal under §1915(e) even for such a conclusory complaint as presented here. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). Nevertheless, in *Keys*, the Sixth Circuit confirmed that the Supreme Court's "plausibility" standard still applies to causation in discrimination cases. *Id.* at 610.

5

Because I conclude that Plaintiff's amended complaint fails to allege sufficient "'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,'" that any of the three Defendants discriminated against Plaintiff by failing to hire him or in any other respect concerning his compensation or terms and conditions of employment, because of his race or national origin, I now recommend dismissal of Plaintiff's amended complaint. *Accord John v. Cuyahoga County*, 2017 WL 6344613 (N.D. Ohio Dec. 11, 2017)(dismissing employment discrimination claims under 42 U.S.C. § 2000e and 42 U.S.C. § 1981, where Plaintiff's allegations that the Defendant discriminated against him in the hiring process on the basis of his race and gender did not rise above the "speculative level," distinguishing *Swierkiewicz*).

In "Claim 1," Plaintiff alleges that Defendant Siemens PLM Software ("Seimens") discriminated against him based upon his "race and nation of origin." (Doc. 6 at 2). Plaintiff alleges that he applied for student internship positions with Seimens in Germany, but that he was informed by Seimens employee Mary Otte on September 1, 2016 that international placements were available only for "students that are enrolled in the university's International Co-op Program." (Doc. 6 at 3). Plaintiff does not assert that he was enrolled in the referenced program. Instead, he alleges that prior to receipt of this information from Ms. Otte, on June 21, 2016, he was told by University of Cincinnati employee Gayle Elliott that

> The strong German language and culture preparation we provide is what attracted Siemens to the ICP [International Co-op Program]. The summer intensive German course for students in the class of 2018 begins in just a few weeks, and it is not possible to accept another student into the program at this time.

6

(Doc. 6 at 3-4). Plaintiff alleges that Siemens' decision not to offer him an international co-op position violates Title VII because it was based on whether or not he had "'strong German language and culture preparation', *which means that the plaintiff was being discriminated against for his race (African-American) and nation of origin, which is the United States of America.*" (Doc. 6 at 4, emphasis added). However, the mere allegation that Siemens' decision not to hire Plaintiff as an international co-op was somehow based on Plaintiff's race and national origin does not make it so. Even though Plaintiff is not required to plead the elements of a prima facie case, his conclusory allegation simply does not raise a "plausible" inference of discrimination based on either race or national origin.

In "Claim 2," Plaintiff alleges that Cincinnati Children's Hospital Medical Center ("CCHMC") also violated Title VII. Plaintiff alleges that on November 3, 2017, he was informed by a fellow undergraduate student that the fellow student had obtained a position with CCHMC at a wage of $15 per hour. Plaintiff further alleges that, apparently before returning to pursue an additional degree at the University of Cincinnati, Plaintiff graduated from Xavier University with a degree in Liberal Arts in 2011. (Doc. 6 at 6). Plaintiff states that, based upon advice given to him by University of Cincinnati employee Chris Cooper, Plaintiff removed the reference to his Xavier degree from Plaintiff's resume prior to applying for a December 2016 UC co-op position with CCHMC. CCHMC advised him that UC co-op positions pay $11 per hour. Plaintiff thereafter sent in a new application to CCHMC with the reference to his bachelor's degree added back to his resume, and a few days later on December 19, 2016, was informed by CCHMC that he would be eligible to receive a wage of $15.50 per hour.

7

Plaintiff alleges that he was initially "discriminated against 'with respect to compensation' based on the fact that another student who had less experience…had been offered compensation for a student training position that was $4 more than the plaintiff's original offer…." (Doc. 6 at 7). He alleges that at the time that CCHMC first offered him $11 per hour, CCHMC "thought the plaintiff was working toward his first bachelor's degree, and based on the compensation offered to another student working on his first bachelor's degree, *it can be concluded that the plaintiff was discriminated against …*." (Doc. 6 at 8, emphasis added).

Once again, this Court cannot agree with Plaintiff's conclusory assertion that CCHMC violated Title VII. Claim 2 does not even contain so much as a conclusory allegation of discrimination based upon <u>any protected class</u>, much less present any factual support to support a plausible inference of such discrimination. Plaintiff alleges only that: (1) an initial offer of employment for a co-op position was provided by CCHMC at a wage of $11 per hour, and was shortly thereafter increased to an offer at $15.50 per hour; and (2) some other undergraduate student was at one time paid a higher wage than Plaintiff was initially offered. Plaintiff's allegation that he was somehow "discriminated" against by CCHMC (not, it appears, based on any protected class but on Plaintiff's decision not to list his Xavier degree on his initial employment application) fails to state any *plausible* claim under Title VII.

In "Claim 3," Plaintiff alleges that the University of Cincinnati discriminated against him based on his race and national origin when its employee, Gayle Elliott, advised him on June 21, 2016 that "The summer intensive German course for students in the class of 2018 begins in just a few weeks, and it is not possible to accept another

8

student into the program at this time." (Doc. 6 at 8). Plaintiff also includes the alleged text of a lengthy June 24, 2016 email from University of Cincinnati Employee Chris Cooper as evidence of discrimination. That email states, in relevant part:

> Hi Bryan,
>
> I think that there might be a bit of confusion as to why you won't be able to participate in the ICP program, so I wanted to step in and try to provide some clarification, as well as a few possible options for you.
>
> The International Co-op Program requires that students take an intensive language course (during this semester for you), as well as several other cultural and language courses. All students who participate in the program are required to do this, as well as take the Introduction to International Co-op Course. It would be too late for you to participate in these courses, which is why the program requires that students apply so early.
>
> Aside from the course requirements, Siemens PLM is hiring one student for the German program, and that student has already been selected. Hiring a student internationally requires much more time, money, and coordination than hiring a student domestically. I know that Siemens PLM is the largest CS employer domestically, so it's easy to think that they have room and resources to hire multiple students internationally. This simply isn't the case, especially since this is their first international student hire.
>
> Even though you won't be able to participate in the ICP German, that doesn't mean that you can't co-op or intern in Germany, or another country for that matter. We have excellent programs in Singapore, Hong Kong, and Toronto, as well as a few newer programs that may be available to you on a shorter time frame. We also have memberships to services such as http://www.goingglobal.com, which could help you locate an international co-op, outside of our official program. There are also paid third party services that can help you secure a position.
>
> Considering your great GPA and the fact that you found a position in Germany for your first coop, I think that your chances of finding an international position are very good, whether it be for both the spring and summer, or just the summer.
>
> I can certainly understand your frustration, but I wanted to try to clarify why you won't be able to work for Siemens PLM internationally in the spring. I'm happy to help you to pursue one of our other international programs or

9

> seek an opportunity outside of those programs. Please feel free to follow up with me if you have any additional questions. I'll be back in the office on the 6th and 7th, and would be happy to meet with you as well, if you'd like.

(Doc. 6 at 9-11, internal emphasis by Plaintiff omitted).

Plaintiff alleges that the references to requirements that Plaintiff take intensive language courses as well as other academic cultural and language courses "show that the plaintiff was being denied an opportunity simply because he was an American." (Doc. 6 at 11). Plaintiff further alleges that Gayle Elliott and Chris Cooper's statements that he was required to have "culture preparation and language courses" "means that because the plaintiff is an African-American, he is not allowed to be admitted into the International Co-Op program without first getting "culture preparation." (Doc. 6 at 12). He argues that the fact that another student in the International Co-op program had been selected for the Co-op position in Germany, prior to the commencement of required summer courses, proves that "the University of Cincinnati, by and through Gayle Elliott and Chris Cooper, practices unlawful employment practices" in violation of Title VII. (Doc. 6 at 12). Plaintiff's conclusory leaps and inferences defy plausibility.

> According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

*Keys v. Humana, Inc.*, 684 F.3d at 610; *see also White v. Coventry Health and Life Ins. Co.*, 680 Fed. Appx. 410 (6th Cir. 2017)(affirming dismissal of employment discrimination complaint where allegations of discrimination were not plausible and failed to rise above the speculative level).

### B. Alternative Screening Under *Apple v. Glenn*

In *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999), the Sixth Circuit affirmed the district court's authority to *sua sponte* dismiss a non-prisoner *pro se* complaint for lack of jurisdiction "at any time" where the filing fee has been made, "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open for discussion." *Id.* at 479. In the case presented, the same reasons stated for dismissal under 28 U.S.C. § 1915(e) apply equally if the Court revokes Plaintiff's conditional *in forma pauperis* status and instead reviews the complaint *sua sponte* under *Apple v. Glenn*. Accord *Shabazz v. Xerox,* 2014 WL 4181600; *Saunders v. Obama*, 2012 WL 1030473, at *9 (S.D. Ohio, 2012).

### III. Conclusion and Recommendation:

For the reasons stated,

1. Plaintiff's *in forma pauperis* status should be REVOKED based upon a lack of indigency, and he should be required to immediately pay the full $400.00 filing fee for this case. He should also be denied leave to appeal i*n forma pauperis*;

2. Plaintiff's complaint should be dismissed *sua sponte* with prejudice for failure to state any claim under Title VII or other federal law, either under 28 U.S.C. § 1915(e) if Plaintiff is permitted to continue to proceed *in forma pauperis*, or alternatively, under *Apple v. Glenn*.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRYAN KANU,

    Plaintiff,

v.

SIEMENS PLM SOFTWARE, et al.,

    Defendants.

Case No. 1:18-cv-37

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).